UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE GUADALUPE SIXTOS CHAVEZ; JUAN MANUEL HERNANDEZ DIAZ; and JESUS HERRERA TORRES,<br><br>　　　　　　　　　　Petitioners,<br><br>v.<br><br>KRISTI NOEM, Secretary, U.S. Department of Homeland Security; Executive Office for Immigration Review; PAM BONDI, U.S. Attorney General; TODD LYONS, Executive Associate Director of ICE Enforcement and Removal Operations (ERO); GREGORY J. ARCHAMBEAULT, Director, San Diego Field Office, Immigration and Customs Enforcement; CHRISTOPHER J. LAROSE, Warden, Otay Mesa Detention Center,<br><br>　　　　　　　　　　Respondents. | Case No.: 3:25-cv-02325-CAB-SBC<br><br>**ORDER DENYING PETITIONERS' EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE**<br><br>[Doc. No. 2] |

Pending before the Court is Petitioners' Ex Parte Application for Temporary Restraining Order ("TRO") and Order to Show Cause Re: Preliminary Injunction. [Doc.

No. 2.][1] Respondents filed an Opposition, [Doc. No. 5], and Petitioners filed a Reply. [Doc. No. 6.] For the following reasons, Petitioners' TRO application is **DENIED**.

## I. BACKGROUND

Petitioners Jose Guadalupe Sixtos Chavez and Jesus Herrera Torres[2] are both currently detained at the Otay Mesa immigration detention center. [Doc. No. 1 at 7]. Both Petitioners, alleged noncitizens, were arrested by Immigration and Customs Enforcement ("ICE") agents on August 22, 2025 in Pasadena, California. [*Id.*]. ICE charged each Petitioner with inadmissibility under 8 U.S.C. § 1182(a)(6)(A)(i), as being present in the United States without being admitted or paroled and placed Petitioners in removal proceedings pursuant to 8 U.S.C. § 1229(a). [Doc. No. 1 at 7].

Petitioner Chavez was initially granted a bond of $7,500 by an immigration judge ("IJ"). [*Id.*] The IJ subsequently amended the order and denied Petitioner Chavez's request for a custody redetermination after the Board of Immigration Appeals ("BIA") issued its precedential decision in *Matter of YAJURE HURTADO*, 29 I&N Dec. 216 (BIA 2025). [*Id.*] Petitioner Chavez reserved his right to appeal this denial but has not yet appealed. [Doc. No. 2-1 at 15.]

While this TRO application was pending, an IJ denied Petitioner Torres' custody redetermination request because "the [IJ] lacks jurisdiction to hear the bond pursuant to matter of Yajure Hurtado." [Doc. No. 7 at 4.] Petitioner Torres waived his right to appeal this decision. [*Id.* at 5.]

Petitioners argue that they should not be mandatorily detained under § 1225(b)(2) but rather granted bond redetermination hearings pursuant to § 1226(a) and related agency regulations. [*Id.* at 8.] Petitioners have filed a petition for a writ of habeas corpus with the

---

[1] Document numbers and page references are to those assigned by CM/ECF for the docket entry.

[2] Respondents assert, and Petitioners do not contest, that Petitioner Juan Manuel Hernandez Diaz is no longer in federal custody because he returned to Mexico. [Doc. No. 5 at 5, n.2.] The Court therefore considers the petition as to Petitioner Hernandez moot.

Court, making the following claims for relief: (1) Violation of 8 U.S.C. § 1226(a); (2) Violation of the Administrative Procedure Act, 5 U.S.C. § 706(2); and (3) Violation of Procedural Due Process Detention. [Doc. No. 1 at 7-9].  Petitioners also filed an *ex parte* motion for TRO, seeking to "enjoin[] Respondents from continuing to detain them unless Petitioner[s] are provided an individualized bond hearing before an immigration judge pursuant to 8 U.S.C. § 1226(a) within fourteen days of the TRO, with instructions that the immigration judge has jurisdiction under 8 U.S.C. § 1226(a) to consider bond." [Doc. No. 2 at 9].

## II. LEGAL STANDARD

The legal standard for issuing a TRO is essentially identical to the standard for issuing a preliminary injunction. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001); *see also Zamfir v. Casperlabs, LLC*, 528 F. Supp. 3d 1136, 1142 (S.D. Cal. 2021).  "A party seeking a preliminary injunction must meet one of two variants of the same standard." *All. for the Wild Rockies v. Pena*, 865 F.3d 1211, 1217 (9th Cir. 2017).  Under the *Winter* standard, a party is entitled to a preliminary injunction if he demonstrates (1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).[3]  A party must make a showing on all four prongs.  *A Woman's Friend Pregnancy Res. Clinic v. Becerra*, 901 F.3d 1166, 1167 (9th Cir. 2018) (cleaned up).

---

[3] Neither party has argued that the Ninth Circuit's more demanding standard for a mandatory, rather than prohibitory, injunction applies.  In the absence of such argument, and considering the Ninth Circuit's classification of an injunction seeking to "prohibit[] the government from conducting new bond hearings under procedures that will likely result in unconstitutional detentions" as "a classic form of prohibitory injunction," *Hernandez v. Sessions*, 872 F.3d 976, 998 (9th Cir. 2017), we apply the prohibitory standard here.

Under the Ninth Circuit's "serious questions" test, "a 'sliding scale' variant of the *Winter* test," a party is "entitled to a preliminary injunction if it demonstrates (1) serious questions going to the merits, (2) a likelihood of irreparable injury, (3) a balance of hardships that tips sharply towards the [petitioner], and (4) the injunction is in the public interest." *Flathead-Lolo-Bitterroot Citizen Task Force v. Montana*, 98 F.4th 1180, 1190 (9th Cir. 2024) (internal quotation marks omitted). "[I]f a [petitioner] can only show that there are serious questions going to the merits—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the balance of hardships tips sharply in the [petitioner's] favor, and the other two *Winter* factors are satisfied." *All. for the Wild Rockies*, 865 F.3d at 1217 (internal quotation marks omitted).

### III. DISCUSSION

#### A. Jurisdiction

Respondents argue that the Court lacks jurisdiction per 8 U.S.C. § 1252(b)(9) and 8 U.S.C. § 1252(g). [Doc. No. 5 at 14-18.] The Court addresses each statute in turn.

**1.    Section 1252(b)(9)**

8 U.S.C. § 1252(b)(9), found in a section entitled "Judicial review of orders of removal," provides that "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order[.]" Respondents argue that even though there is no final removal order in this case, this jurisdictional limit includes "the government's decision and action to detain [Petitioners], which arises from DHS' decision to commence removal proceedings, and is thus an 'action taken . . . to remove [Petitioners] from the United States.'" [Doc. No. 5 at 17.] The Court disagrees

The Supreme Court held in *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018), that § 1252(b)(9) did not present a jurisdictional bar to the review of claims by detainees who were denied bond hearings and subjected to mandatory detention pursuant to 8 U.S.C. § 1226. *Id.* at 399. The Supreme Court reasoned that many challenges in immigration

"cases could be said to 'aris[e] from' actions taken to remove the aliens in the sense that the aliens' injuries would never have occurred if they had not been placed in detention. But cramming judicial review of those questions into the review of final removal orders would be absurd." *Id.* at 293.  Because the *Jennings* petitioners were "not asking for review of an order of removal . . . challenging the decision to detain them in the first place or to seek removal; . . . [nor] even challenging any part of the process by which their removability will be determined," *id.* at 294-95, § 1252(b)(9) was not a jurisdictional bar. *See also Nielsen v. Preap*, 586 U.S. 392, 402 (2019) (holding § 1252(b)(9) was not a jurisdictional bar to challenge of detention authority under 8 U.S.C. § 1226(c)).

The Ninth Circuit agrees.  "[Section] 1252(b)(9) has built-in limits, specifically, claims that are independent of or collateral to the removal process do not fall within the scope of § 1252(b)(9)." *Gonzalez v. U.S. Immigr. & Customs Enf't*, 975 F.3d 788, 810 (9th Cir. 2020) (internal quotation marks omitted).  Specifically, "claims challenging the legality of detention pursuant to an immigration detainer are independent of the removal process." *Id.*

Here, Petitioners do not challenge ICE's authority to charge Petitioners, place them in custody initially, or commence removal proceedings.  [*See generally* Doc. Nos. 1, 2.] Instead, Petitioners challenge their classification under § 1225(b)(2) instead of § 1226(a), and the BIA's decision that it lacks jurisdiction to provide a bond redetermination hearing under § 1225(b)(2). [Doc. No. 2 at 22.]  Section § 1252(b)(9) thus poses no jurisdictional bar to this Court's review.

  **2. Section 1252(g)**

Respondents similarly argue that Section 1252(g) divests this Court of jurisdiction because "Petitioners' claims stem from ICE's decision to commence removal proceedings and therefore detain them." [Doc. No. 5 at 14.]  Section 1252(g) provides in relevant part: "[N]o court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C.

§ 1252(g). Petitioners argue that § 1252(g) "does not apply to a legal custody challenge" such as theirs. [Doc. No. 6 at 8-9.] The Court agrees with Petitioners.

As the Supreme Court reasoned in *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999), § 1252(g) "applies only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Id.* (emphasis in original); *see also Ibarra-Perez v. United States*, No. 24-631, 2025 U.S. App. LEXIS 22089, at *5 (9th Cir. Aug. 27, 2025) ("The Supreme Court has instructed that we should read § 1252(g) narrowly."). Accordingly, § 1252(g) does not bar the "many other decisions or actions that may be part of the deportation process[,]" including the decision "to refuse reconsideration" of the "final order that is the product of the adjudication." *Reno*, 525 U.S. at 482. Moreover, "[i]t is implausible that the mention of three discrete events along the road to deportation was a shorthand way of referring to all claims arising from deportation proceedings." *Id.*

Here, again, Petitioners' TRO application does not contest the charges brought against them or the initiation of removal proceedings. [*See generally* Doc. Nos. 1, 2.] Their detention pursuant to § 1225(b)(2) may be during—but is nonetheless independent of—the removal proceedings. Accordingly, § 1252(g) does not strip this Court of jurisdiction.

**B. Exhaustion**

Respondents argue that Petitioners have not exhausted their administrative remedies because they have not appealed the IJ's decision to the BIA. [Doc. No. 5 at 18-20.] There is no dispute that exhaustion here is a prudential, not mandatory, requirement. [*See id.* (acknowledging habeas petitioners do not need to exhaust direct appeals first); Doc. No. 6 at 3.]

"[A] court may waive the prudential exhaustion requirement if 'administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void.'" *Hernandez*, 872 F.3d 976, 988 (9th Cir. 2017) (quoting *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004)). "The party moving the court to waive prudential exhaustion

requirements bears the burden of demonstrating that at least one of these *Laing* factors applies." *Aden v. Nielsen*, 2019 WL 5802013, at *2 (W.D. Wash. Nov. 7, 2019).

Petitioners argue that "[a]ny appeal to the [BIA] is futile in light of *Matter of YAJURE HURTADO*, 29 I&N 216 (BIA 2025)." [Doc. No. 1 at 7.] The Ninth Circuit has made clear that "there is no requirement of exhaustion where resort to the agency would be futile" and that one example of such a case is "where the agency's position on the question at issue 'appears already set,' and it is 'very likely' what the result of recourse to administrative remedies would be [futile.]" *El Rescate Legal Servs., Inc. v. Exec. Off. of Imm. Rev.*, 959 F.2d 742, 747 (9th Cir. 1992).

Here, the BIA issued the *Matter of YAJURE HURTADO* as a precedential decision. The BIA's precedential decisions "serve as precedents in all proceedings involving the same issue or issues." 8 CFR § 1003.1(g)(1); *see also id.* § 1003.1(d)(i). Respondents do not argue that Petitioners misunderstand or misrepresent the holding or effect of *Matter of YAJURE HURTADO*; instead, they argue that "exhaustion is warranted because agency expertise is required." [Doc. No. 5 at 19.] But the BIA has already applied its expertise in deciding and designating *Matter of YAJURE HURTADO* as precedential. It therefore seems clear that anyone deemed inadmissible under § 1182(a)(6)(A)(i) (that is, "[a]n alien present in the United States without being admitted or paroled") will be subjected to mandatory detention without bond under § 1225(b)(2) upon BIA review.

The Court therefore finds the prudential exhaustion requirements waived for futility. Because Petitioners need to show only one of the *Laing* factors applies, *Aden*, 2019 WL 5802013, at *2, the Court need not address the other factors.

**C. Preliminary Injunctive Relief**

A preliminary injunction is an "extraordinary remedy never awarded as of right." *Winter*, 555 U.S. at 7, 24. The first *Winter* factor—likely success on the merits—is "the most important" and is a threshold inquiry. *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015). Petitioners carry the burden of demonstrating a likelihood of success (or alternatively, showing "serious questions going to the merits"). *See A Woman's Friend*,

901 F.3d at 1167; *All. for the Wild Rockies*, 865 F.3d at 1135. Because we conclude that Petitioners have not demonstrated serious questions about the application of § 1225 to aliens present in the United States, much less a likelihood of success, we deny Petitioners' request for a TRO.

Petitioners contend that because they are noncitizens residing in the United States who originally entered the United States without inspection or parole, and have not affirmatively sought admission, § 1225(b)(2)'s mandatory detention provision does not apply to them. [Doc. No. 1 at 8; Doc. No. 2 at 16.] Petitioners say they are likely to succeed based on the text of § 1225(b)(2) and its interplay with § 1226(a), the legislative history of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), and the BIA's previous longstanding agency practice of granting bond redetermination for noncitizens present in the U.S. under § 1226(a). [Doc. No. 2 at 11-18.] Respondents argue that Petitioners' interpretation is inconsistent with the text of § 1225(b). [Doc. No. 5 at 23-25.] The Court agrees with Respondents.

"We begin, as always, with the text." *Esquivel-Quintana v. Sessions*, 581 U.S. 385, 391 (2017). Section 1225(b)(2)(A) requires mandatory detention of "an alien who is *an applicant for admission*, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted[.]" 8 U.S.C. § 1225(b)(2)(A) (emphasis added). And Section 1225(a)(1) expressly defines that "[a]n alien present in the United States who has not been admitted . . . shall be deemed for purposes of this Act *an applicant for admission*." *Id.* § 1225(a)(1) (emphasis added). Petitioners do not contest that they are "alien[s] present in the United States who ha[ve] not been admitted." By the plain language of § 1225(a)(1), then, Petitioners are "applicants for admission" and thus subject to the mandatory detention provisions of "applicants for admission" under § 1225(b)(2).

Such a reading of the statute comports with Congress' addition of § 1225(a)(1) by IIRIRA in 1996. Prior to IIRIRA, an "anomaly" existed "whereby immigrants who were attempting to lawfully enter the United States were in a worse position than persons who

had crossed the border unlawfully." *Torres v. Barr*, 976 F.3d 918, 928 (9th Cir. 2020). The addition of § 1225(a)(1) "ensure[d] that all immigrants who have not been lawfully admitted, regardless of their physical presence in the country, are placed on equal footing in removal proceedings under the INA—in the position of an 'applicant for admission.'" *Id.* As the Ninth Circuit did recently in *United States v. Gambino-Ruiz*, 91 F.4th 981, 990 (9th Cir. 2024), we thus also "refuse to interpret the INA in a way that would in effect repeal that statutory fix" intended by Congress in enacting IIRIRA.

Heeding the plain language of the statute also does not contradict or render superfluous § 1226, as Petitioners urge. Section 1226(a) provides that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 USC § 1101(a)(3) defines an alien as "any person not a citizen or national of the United States." As the *Jennings* court explained, § 1226 "generally governs the process of arresting and detaining" certain aliens, namely "aliens who were inadmissible at the time of entry *or who have been convicted of certain criminal offenses since admission*." 583 U.S. at 288 (emphasis added). For example, the named petitioner in *Jennings* was a lawful permanent resident of the United States. *Id.* at 290. As long as such individuals have not been charged with the specific crimes listed in § 1226(c), they remain subject to the discretionary detention provisions of § 1226(a).

Nor does § 1225's explicit definition of "alien[s] present in the United States who ha[ve] not been admitted" as "applicants for admission" render the addition of § 1226(c) by the Riley Laken Act superfluous. Section 1226(c) simply removed the Attorney General's detention discretion for aliens charged with specific—but not all—crimes. The Attorney General may still exercise her detention discretion under § 1226(a) for any other aliens falling under that subsection who are not charged with the specific crimes carved out by § 1226(c).

Because the Court finds on the present record that Petitioners have not shown either a likelihood of success or serious questions going to the merits, we do not address the

remaining *Winter* factors. *See Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 944 (9th Cir. 2013) (declining to consider remaining *Winter* factors based on agreement with district court's decision on likelihood of success).

## IV. CONCLUSION

Based on the foregoing, Petitioners' application for a TRO is **DENIED**.

**IT IS SO ORDERED.**

Dated:  September 24, 2025

_____
Hon. Cathy Ann Bencivengo
United States District Judge